quite night court, but it is afternoon court. We have four arguments today, all important. I'll give our best attention to and give you answers as soon as we can. We'll take two and then probably take a brief break and not try to go all the way through. I expect most of you have been through this drill before. Please watch your red light. You can finish up any question you've been asked, but otherwise no more than completing your sentence after the red light comes on. You never have that problem. Probably none of you do. First case of the day is U.S. v. Margarita Escandon. Ms. Meyer. You've been here a few times since the pandemic? Twice. Twice. Yes. First time without a mask. Freedom. Yeah, I guess. Or terror. Good afternoon, Your Honor. Margie Meyers, federal public defender representing Margarita Escandon and her appeal of the revocation of her supervised release. The actual issue before the court and the issue that we claim plain error is that the district, nobody made any reference to the guidelines in this revocation case. It's clear that the statute requires the court to consider the guidelines, but nobody said anything. Let me ask you about this document. I don't know how the professionals pronounce the acronym, but J-S-O-W. I'm not sure I've seen that before, but it is standard. I'm sure my colleague on the left could fill me in on all this. I should have asked him, but it's a standard for revocation in this context of supervised release. It's not. I will say. Is it unusual? At least in the Southern District of Texas, it's all over the map. I think it's always prepared. Whether it's provided to the parties, sometimes never. Well, for whom is it prepared? The judge? The judge. Right. So that's what I'm saying. It's prepared when you're revoking supervised release. And the judge, that's where he sees, he or she sees the range. Yes. And typically it's given to the judge. I guess so. You're not aware of it. I mean, why would they prepare it if they're not going to give it to anybody? I think we can assume it's given to the judge. Okay. And so then wouldn't you all need to prove that the judge never had it rather than the government has to prove the judge did? I don't think so because what is clear is the judge has to let everyone on the record know what the guideline range is. And in some ways, it's worse if the judge has something that the parties don't have. I mean, I refer, for example, the court to Diggles, which isn't about supervised release. But the whole issue is what is the court considering? What is the guideline range that the judge is considering? And giving the parties an opportunity to object. Right. But you all could very easily have objected to the failure to have that. I mean, you knew you were there on a sentence, not you personally, but you're there on a sentencing. You know, there's always going to be some sort of guideline, some sort of policy, some sort of something. And no one said anything. And therefore, that's why it's a plain error review, right? Exactly, Your Honor. That is why it's plain error. Okay. But I think it's even plain error, the question of what the court considered and what the court did on considering that, including this argument that the 18 to 24 is not the right guideline. I stand by my view that the plain error is the failure to even discuss or to demonstrate consideration of the guideline. And what's very important about this document compared to the pre-sentence report, there is no requirement of disclosure, no procedure for objection, no litigation. This is not, as the government suggests, like the pre-sentence report. I suspect... So you're saying generally it is not given to the public defender or the defense? It is sometimes. We had it. Okay. So it says all over the map. That's part of what the map would show on whether it's disclosed to the... Yes. It is almost never filed. I think the government could concur. In Houston, it's almost never filed. But we supplemented the record in this case? Yes, the government. Allowed it to be supplemented. I don't know if you objected, but it's in the record now. That's probably why I haven't seen them before. I'm just not paying attention. But this is the only computation of the guideline range based on whatever the reasons for the revocation are. Yes. And again, I think that's the problem. There is no effort to address the guidelines. Now the government... Well, but this would be an issue in every revocation, it seems to me, for the public defender or for the defense. You haven't seen this particular document. So I'm not saying it doesn't work that way, but it seems to me that if you have some concern about how the government is calculating what happened, some effort to find that out or make sure that you know what the judges are relying on, doesn't that fit into sort of the era on whether it's plain or not? I mean, you're here objecting that this shouldn't be a Class A, should be a Class B offense, but that was an issue back at the time of revocation that you would have wanted it to be the lesser, and you didn't know from what you're telling me what was going to happen. So during this hearing or whatever we should call the, if this was rather rapid motion or not, in that way you ask, how are you considering this, Your Honor, and this should be a Class B and not a Class A? Well, what's interesting is that not only did that not happen, but it didn't happen in this little case that the government 28J'd, where the court didn't consider it at all. And the other problem in this case— Which was also Southern District. Yes. And was also a pretty experienced judge, different one, but a pretty experienced judge who clearly knows, I mean, like how to do sentencing. This isn't some brand new judge who is clueless about sentencing or me sitting on sentencing here and there. You know, so I guess I'm just struggling with why everybody knows the deal and no one brought it up, and yet we're supposed to reverse based on that when you all know the situation, the judge and your lawyers and the government's lawyers. Well, I'm not sure everybody knew, and more significantly, if we get to what we say is the error. At the time of the revocation, that the guideline was wrong, and Judge Haynes, I want to point to your concurrence in Little, which emphasizes that the calculation in Little was very simple. Not only was it simple, it was Grade C. Nobody was fighting about whether it was worse. The calculation in this case is the kind of calculation that makes all of our heads spin. Is it a crime of violence? Is it categorical? What do we look at? And so the failure, so not only is it wrong, which again, Judge Haynes, you thought when it was wrong in MIMS that was problematic. Yeah, but you can see I'm like the dissent and the concurrence, and guess what? We're bound by majority opinions, even me. So I'm bound by MIMS now, whether I agreed with it or not. But MIMS is fact specific, and the difference in MIMS is there is a calculation, and the defendant was lucky not to get 37 months, emphasized that it was exact same conduct that the defendant was on supervised release for, and I'm sure the government will say Ms. Escondon has a record of assaults, a record of drinking, but it's different. That's what I was going to ask you about, because I'm not just thinking that. The judge was very concerned and said, what are you doing getting drunk at 2.30 and beating up your daughter and this kind of thing? So obviously this was a case where the judge was really focused on what actually happened. And so let's turn to that question of crime of violence. Why would this be treated the same way as regular sentencing, when we're talking about supervised release, where the rule is that you are not supposed to commit the crime. It's not you can't get convicted of a crime, it's you're not supposed to commit it. And certainly there are crimes that this would fit that are crimes of violence. There's also ones that aren't. So why wouldn't you be able to look at the actual conduct when you're talking about revoking a supervised release and sentencing for that, rather than your original sentencing, which is a different cubby? I think the best case for that is the case out of the First Circuit, which is Garcia-Cartagena, which analyzes 7B1.1, says a grade A violation is a crime of violence. Then it says a crime of violence is defined in 4B1.2, which we all know is categorical. And what that court emphasizes and what makes the most sense, and what the court did in Willis in the Ninth Circuit, is the question whether the offense is a crime of violence is categorical. Does it have as an element the use of force? And the reason for that, you look at the definition, that's what they said, but of course you look at conduct. It wouldn't make sense to go to Shepard documents for somebody who's never been convicted. So then, having said, okay, this offense, murder, is a crime of violence, then you say, looking at the conduct, without regard to whether the defendant is charged or convicted, did the defendant commit that act? And that's what the difference is on supervised release. And in fact, even the circuits that go supposedly a different way, the only court is Golden, out of the Seventh Circuit, to actually say, you look at conduct to decide the whole thing. All of the others address, either they don't address it at all, or they address whether it's a felony or a misdemeanor. And that, otherwise, why would the commission say- But see, 4B1-2 is synced with 4B1-1, which is looking at convictions. And those are categorical. We just, you were convicted of X, and X includes recklessness, and so we say, okay, well that doesn't qualify for this or that. But that's not what we have here. We have actual conduct. And the actual conduct of basically beating up her daughter does seem violent to me. Well, number one, she didn't beat up her daughter. Well, she threw the beer at her head. That's probably worse. Well, but again, it's not clear whether it was negligent or reckless, which does matter. If you're going to use the words of the definition of crime of violence, it at least has to be a use of force. She was charged with injury to a child, negligence. Again, doesn't matter what she's charged with. But the court didn't even look at that because at the time of this, everybody assumed because of Reyes-Contrera that categorically injury to a child was a crime of violence. It was wrong, but Borden makes that clear that that's not true. But the difference is, why do you have that definition? There are two factors in what we usually call the categorical approach. One is the offense of crime of violence, and that's categorical. We look at does it meet the generic definition or does it have the elements? The other is, as Judge Haynes, you just pointed out, was the person convicted of that offense? That's the other categorical approach. And because you have to be convicted, there are only certain things you can look at, whether it's modified or not. You have to look at what was the defendant convicted of. That would make no sense in this context because the defendant has to be convicted. So looking at the way the guideline is set up, with 7B.1 referring you to the definition in 4B.1.2, it's categorical on is it a crime of violence. It is obviously not categorical on whether the defendant committed that crime because the defendant hasn't been convicted. So again, nobody analyzed that in this case because if they looked at the guideline, they probably treated it categorically. There's no determination of whether when she's falling down drunk and her daughter says she threw it, but her daughter won't talk, and she says she pushed her, there's no determination of whether that was a drunken throw. Note that it would not be a crime of violence if she was driving drunk and she ran over her. Injury to a child of all offenses, we don't know if it's a crime of violence. So there's no determination by the judge in this case, as there was even in the supposedly non-Garcia-Cartagena cases, saying the defendant intentionally used force. Because I do think that after Borden, recklessly is not enough. So if we go to that, it comes back to the problem of we don't know what the judge did and it made a difference. Okay, let me ask you practically. She's to get out on May 2nd. Why didn't you move to expedite this appeal? Because even if we rule fairly promptly, and even if we rule your way and send it back, by the time a hearing can be set and all of that, I'll be amazed if it's much before or even before May 2nd, at which point it becomes moot. I didn't move to expedite because at that point she wasn't near getting out. And I did file my brief early. I did let the government get a brief continuance. It's very hard to expedite. Certainly we could have had a quicker resolution that would have benefited her, and it may well be that this case is over by the time that we get there. Let me ask you practically speaking, where is she now? She's in a halfway house. She's already left whatever the longer term incarceration is, and she's being sequenced out in some fashion. Yes. And she's May 2nd, everything is done because there's no more supervised release. That's correct. So it may be that there's not much relief we can get for her. But I do think when we look even at little, and it doesn't help with her, but a message needs to be for all of us, the court, the defendant, the prosecutors, you need to figure out what the guidelines are. Well, but if she had another year, we could send it back to say, what did you decide, judge? And that'd be easy enough. Here, by the time you do that and it comes back to us and back and forth and back and forth, well, it's May 2nd. Well, and I understand, and normally if you look at these cases, the response should be to remand it, because the district judge didn't address this complicated question of, is it categorical, and whether or not it is, was it actually a crime of violence? And that's what a number of the cases, Willis included, do. They do remand. But it's a problem because she's almost finished her sentence, Your Honor. Thank you, Ms. Meyer. The government may have a different point of view. Let me ask you about this whole process. It does seem to me we have an awful lot of cases dealing with computations in the PSR, and it's thought out, and it's plain error or it's not plain error. From what I'm understanding, I want you to confirm or deny or clarify, that doesn't go along with this document, and it's not potentially, and here wasn't even provided to the defense, the JSOW. So how do we put something like that within the framework that we're used to, considering plain error on one of these computation issues? Well, this is... Do you agree it wasn't provided to the defense? I cannot agree to that. I have information to the contrary, but I can't prove it standing before you today. But it's not required, you will agree it's not required to be provided? Yes. How does it come up? It seems to me this is a central issue to what she's now arguing anyway, and I don't know what counsel was arguing in the district court at sentencing, but what sentence she's going to get is going to depend on the guidelines and how you calculate this particular offense, which seems central, and there's a kind of readily seen, at least in hindsight, problem in how you're going to pigeonhole this particular offense. How should it have been dealt with in your mind as we evaluate plain error or not in this case? What, in this context, at the start of each one of these, should the defense say, Your Honor, we need to see the calculation that's been made on this? I would agree that it's not always clear whether the JASAL gets provided to the attorneys or the counsel or not. McAllen has this weird process... McAllen? Yeah, this is from McAllen. They have a kind of odd process, and it's taken me 14 years to even figure this much out. What they do is the probation officer creates a special electronic folder, and it is given a different cause number. It's given a miscellaneous number. Instead of being filed in the original CR number, it's supposed to be filed with this new MC number, and it's supposed to be...it would be ECF'd, and the parties will get it. However, that being said, it doesn't always get done, and we couldn't find in our files that it ever was done. So that's a problem. However, this defendant was represented by a seasoned assistant federal public defender. He certainly knew the drill. Dr. Tran at the table over there? Somebody else? I think one of her employees. He knew the drill. He knew this worksheet would be prepared. It is the judge's sentencing options worksheet. I have no doubt it was provided to Judge Alvarez. If it hadn't been, I'm pretty sure this probation officer would have gotten a call. But nevertheless, you know, the AFPD, all he had to do...he could have gotten this thing like I've been getting them sometimes for 14 years. You contact the probation officer, and they'll give it to you. My colleagues may remember, how did this JSOW become an issue on the appeal? Who...what prompted it to be added to our docket? Was it in the briefing first referred to, or did something happen in the district court to make that an issue? It was me, Your Honor. I got her brief, and I read it, and she was definitely, you know, raising this, that, you know, the judge never saw it. The judge didn't know the guidelines. And, you know, I knew that this thing existed out there somewhere, and I'm the one who supplemented. Thank you. But it is a normal...it always gets prepared, or as far as I know, always is prepared. So the FPD could simply have asked for it. And at any time he wasn't provided, or he didn't have it by the time of the sentencing, or the revocation, he could... Okay, but they agree it's plain error that what happened, plain error review, although they seem to argue a little differently on the actual core issue of whether this was a crime of violence. But anyway, so let's get to that. What is your view on the moot issue I raised at the end, or the future mootness, potential future mootness? I think it is going to be moot as of May 2nd. She has no further term of supervised release to serve, so I think she's done, and it's moot at that point. Okay, and I realize it's not moot right now. We could decide today, the district judge could decide tomorrow. I get that, but I guess I was wondering why this wasn't sought as an expedited appeal. I don't know. That would be the appellant's choice. All right, so let's talk about this categorical thing. I guess I'm struggling a little bit with, if we decide that issue, why we would necessarily treat it the same as original sentencing, because those are dealing with convictions, and there's no question those are categorical, and modified categorical, and that whole long, long line of cases. But this is a little different, because you're looking at the actual conduct. And the conduct as described that I saw, does strike me as an intentional crime of violence, or at least arguably so. So if we're accessing that with plain error, we don't, I mean, the fact that it also could have been negligent, you're just kind of sitting here, and your hand goes up, and hits somebody with your beer, versus you threw it at them. If it could be either one, is that plain error? I think so, Your Honor, because for that to even be an issue, you have to apply the categorical approach, I think. And, you know, there's a big split on that. But you think it is plain error? In other words, the judge here was very concerned about what happened with this guy. Oh, yes. And so my question is, if the judge did not expressly make the determination of intentional versus negligent versus whatever, but the underlying facts could support that, then is that plain error in a context such as this one, in the supervised release revocation context, versus the, I understand, the sentencing, original sentencing? No, Your Honor, I don't think that's plain error at all. Judge Alvarez found that, I mean, she looked at the evidence, the police report, it was very detailed, it was submitted into evidence without any objection, and she considered all that and said, you committed the offensive injury to a child. And she didn't specify, you know, intentional or negligent. Of course, we know she was charged with negligence, but that's not an issue here. She could have been charged, though, with Subpart E, which would have been intentional. So there is such a crime in Texas that would be intentional. Now, what people charge is not always, I mean, sometimes somebody's charged with manslaughter when they really committed a murder, but because of some deal or something like that, they're charged with a lesser charge. So the charging is not binding in this context, right? Of course. Okay, so how do we evaluate it? I mean, what would be the rule you would articulate if you were writing this opinion? How would you articulate, whether it's categorical or something else, and if it's something else, what is that something else? Well, I would say just all the confusion about this takes it totally out of plain error. But if the opinion gets to the whole categorical versus non-categorical, 7B1.1 specifically says the judge is supposed to look at actual conduct. And that makes total sense in the context of supervised relief because you often don't have a conviction. You just have somebody who's been arrested. They may or may not have even been charged yet. So you have to look at that. And the categorical approach is grounded. It goes back to Taylor and Shepard and that notion that judges should not be conducting many trials with respect to what happened during a prior conviction. But here, the guidelines specifically ask the court to look at that actual conduct and evaluate it. So to me, that takes this totally out of the categorical approach. I mean, that's the revocation of the supervised releases, finding that they committed the conduct. So it is a mini-trial. It kind of has to be. It really is. And that takes it out of all the underpinnings of the categorical approach. I think the Seventh Circuit got it right in Golden. And when you look at what she did, she clearly used physical force against the person of another. Even if you look at injury to a child, if you're not applying it categorically and you're only looking at whatever elements are implicated in her actions, she also committed an act that caused bodily injury to a child under 14. So what is your response to your opponent's argument that everybody at the time thought any injury to a child's crime of violence, so it doesn't matter, was it negligent, was it reckless, was it intentional? But now that does matter. So tell me how we assess that. Does that make it plain error? Where does that put us? No, Judge, I don't think it does, because, I mean, they could have always, at any point during any of this, objected and said, Judge, you need to make that finding. She didn't. You know?  is it didn't matter at the time of sentencing. It does matter now. I mean, I think the premise for Judge Haynes is it didn't matter at the time, so why make an issue of it? But now it does matter. Yes, after Borden, she correctly points that out in her reply brief. So what's your response to that? Well, but I think, again, Borden is the categorical approach. If we're not going to apply categorical approach to revocation proceedings... Well, the First Circuit, I mean, the division among the circuits about where the categorical approach fits in and when conduct fits in, it seems to me there are reasonable ways to interpret this that come out of both lines of the Circuit Court opinions that we'll have to resolve. But I do think this point being looked at right now, what was the district judge considering at the time? And I may explain to some extent why this issue only came up after sentencing, is because injury to a child itself didn't need to have this sort of focus on it. It was enough just that you injured the child. Yes. Yes. I would agree with that. You know, the First Circuit and the Ninth Circuit, first of all, those cases were decided not under plain error. They were, you know, preserved error, abuse of discretion. And I really think that those courts, with all due respect to them, they kind of overlooked rule one of the categorical approach. You don't look at actual conduct. In this context, that's what you're supposed to do. So I think the Seventh Circuit has the better resolution here. And if I could touch briefly on the fourth prong, even if you get through those first three ones, you look at MIMS. MIMS is very, very close to this case. Isn't there a good separate opinion in that case, though? Yes, someone did. Oh, well. Look, I am bound by the majority opinion in a case I dissented on, even if the dissent was the most brilliant document ever written. I am still bound by it. Now, the problem, though, on that is the MIMS addressing the fourth prong, it is discretionary. And I think MIMS would say that, would agree with that. So I guess the question is, why would we exercise a discretion in your favor in this case, even assuming, arguendo, the first three prongs go your opponent's way? Well, you know, your dissent in MIMS was well-taken, and it mentions, you know, it relies on Rosales Morales. If the court, the Supreme Court, had wanted to completely do away with the fourth prong of the Olano test, they could certainly have done so in Rosales, but they didn't. And Justice Sotomayor left that door open. But didn't she make it clear that you do take something extra, that generally it will be enough if you satisfy the first three? And not saying that the fourth factor prong seems to be a little overdone. But anyway, the fourth factor doesn't apply. It seems to be the exception and not the rule. And so I don't think I'd read MIMS to create a separate rule for the Fifth Circuit, does it? No, not at all. So we generally would lean towards saying the fourth consideration under the plain error test is generally met, but not always. And so why would it not be met here? Well, here you have this defendant. She has a long criminal history. She has a long history of getting breaks. She's been on supervisory leave. She starts violating like the day she gets up. She doesn't report. And she keeps not showing up. She keeps testing positive for marijuana and cocaine. She does, she refuses to attend her probation officer meetings. She refuses to attend the substance abuse treatment that she seems to need. So basically saying she's the kind of person this record would show should stay in incarceration as long as possible. I mean, that seems to be, I mean, that's why we wouldn't say that her sentence needs to be reconsidered, that she has all this misconduct, so she doesn't deserve this extra consideration under the plain error test. I mean, I think that's kind of what Judge Alvarez said, you know, this is pointless to keep you on supervisory leave anymore. You need to go, you know, you need to go back to prison. Well, and, I mean, Ms. Eskadon had received a lower sentence originally than the guidelines. So had gotten a below guidelines. So even assuming argument of this is an above guidelines, maybe that's a you know, meet the meet the harm kind of situation because she took advantage of the benefits she got and went out using drugs and throwing beer bottles at her daughter and whatever. So, and Judge Alvarez was really concerned. I mean, you're reading a cold record but I could hear it by reading it. And it was it wasn't just a nothing. I mean, she was quite upset with that. So I do think I do think that's relevant. I just don't know where that takes us on the fourth prong if we get there. I think you're better off if we don't get past the third prong. Maybe, but but even, I think, or the second for that matter. Agree. But I think that what you're talking about, and that's mentioned in the worksheet that, you know, there was of course, the judge always has the power or the ability to upward vary. There was actually an upward departure that could have come into play here based on her downward departure, which I think was an early disposition. What was her stat max? I'm sorry? What was the stat max for her? The what? Statutory maximum. Oh, 24 months. And her... Would you say 24? 24 months. Two years. And she got 18 and they understood the grade A range to be 18 to 24. Did they cite the PLESAC decision? Are you familiar with that? There's a plain error vacate remand eradication sentence for miscalculating the guidelines. I'm sorry, which case? PLESAC. P-L-E-S-A-K. I don't know that case, Your Honor, but I would think the facts here stand on their own. And if there are no further questions the government would ask for an affirmative. Well, I guess I do have a question I'll ask. What would your rule be to satisfy consider? Let's assume the objection had been made. What would my rule be to... What would the rule going forward be for a district court to confirm that they had considered the guidelines? Oh. Well, I think a big start would be encouraging the Southern District of Texas to be unified and to put this thing on the record. I think it would be very interesting to hear these quibbles about who saw it, who got it, when, and where. I'm not aware of any district that does that. I think probation's comments to sentencing judges are often not given. So I'm not sure there's a justification for that. Redication, these are informal and unscripted. They have to do with ascertaining a violation. And then, as in this case, the sentence is often a battle over will they be put back out on supervision? So to somehow use 3553 to say that probation's got to come up with a document that crunches through the guidelines, are you suggesting you think that would be helpful? And it's given to the parties? It would be helpful. The problem here is that, as far as I know, that is the only place that the guidelines calculation for the revocation hearing appear, is in that worksheet. This is not like original sentencing where you have this whole PSR and there are objections and amendments. Why would we want to interpret 3553E to make it required when original sentencing's come months later the guidelines, of course, by rule have to be given to both sides? This is a worksheet that accompanies the informality of a revocation. Well, I do think there's definitely some tension there. But it would just be better if it was on the docket sheet where everybody could see it and have access to it. And again, we would not get into these quibbles on appeal. We may not cure all the problems, but we will do the best we can with this case. I appreciate that, Judge. We ask for affirmance. Thank you. First of all, to be clear, we did have the worksheet. I went back after the government, so we did have it. I don't know that the defendant ever saw it. This was a pandemic video sentencing where nobody is in the same room. In response to your question, Judge Higginson, I would direct the court to Deagles, which is really about conditions of supervised release, but really sets a due process floor where the court pronounces what it's going to do, gives the way everybody has noticed, the defendant is present when the judge says what they're going to do. Are you disadvantaged that you didn't object? Don't we review even preserved revocation sentence objections for plainly unreasonable? Sounds awfully like plain error. We're disadvantaged by we didn't object to if that calculation was out there. In other words, I'm in this bizarre situation of saying there's no calculation, so it's plain error, and then saying on substantial rights, we think she got the calculation wrong. It seems like she did get the calculation wrong after Borden. What would you say the rule going forward should be? How does a judge, should they just say, I have thought it through? Would that qualify? I think the judge has to say the guideline range, which is usually what they do. I think that's what 3583E says. It says you have to consider the guidelines, so the judge now there's cases where it's in the guideline range or you have to consider the guideline factors. It seems to me part of the case law that I was looking at in preparation for this, it looks like more that you considered that you were aware of and factored in the considerations under the guidelines as opposed to having an accurate guideline range in front of you. Part of what Judge Higginson who knows more about this than I, but maybe no more than you, was indicating on this, we're not usually getting into this in revocations or probation. We're not usually getting into guideline range at that stage. Usually we aren't even having oral argument on guideline revocations, but Your Honor, the answer to that is page 15 of the brief where 35, my brief, 3583E3 says consider all the factors and 3553 A4 says consider the applicable guidelines. But if Judge Alvarez had said, I think you did this intentionally, you threw this beer can at your daughter out of anger and nastiness, would it be an error under Borden? Because again, we're not talking about the sentence in the categorical and all that there. We're talking about her determining what occurred and what she would have occurred as an intentional crime or determined what occurred as an intentional crime and that is a crime of violence. Actually it depends on using the categorical approach because injury to a child is not divisible. But the one in Texas has subpart E that does provide for a felony for a certain level if it's intentional. So that is divisible. According to this court in U.S. versus Martinez-Rodriguez injury to a child under Texas law is not divisible and it can never be a crime of violence. But that, what if she had been charged with E? My position, well what if she had done it? My position is it doesn't matter. There are two steps. You decide and I think Golden is wrong, you decide and you decide is it categorically a crime of violence and that fits the way the guideline directs you to 4B1.2 and then you decide looking at conduct is it that offense? Another case the court can look at is Willis out of the Ninth Circuit where that's they actually remanded because that statute was divisible and the court had not made the divisibility determination. So that's why I keep emphasizing there's two categoricals. That the reference to 4B1.2 means you have to decide if the specific offense is a crime of violence. Third Circuit even says that in Carter and then the court looks at the conduct to see if it meets that crime of violence. I would also note that in this case she did give bottom of what I think she thought was the wrong guideline which is a further indication under perhaps the third and the fourth prong that that really made a difference in Mims the court said you're lucky I'm not going way above the guideline. So it clearly was a factor. But I would say that Diggles kind of sets out a more informal way in which everybody needs to know what the guidelines are and then argue from there. Thank you. Alright counsel. Thank you both.